IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:15cr301 (JCC) |
| | ) | |
| SAMMY ARAYA, | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendant Sammy
Araya's ("Defendant" or "Mr. Araya") Motion to Adopt and Conform
Discovery Motion(s). [Dkt. 368.] In this motion, Defendant
seeks to adopt "any and all defense discovery motions filed in
this matter including specifically docket number 364 filed by
co-defendant's counsel." [*Id.* at 1.] Jen Seko's original
discovery motions included: (1) Motion for Clarification of
Discovery; (2) Request for Exhibit List Production 45 Days Prior
to Trial; and (3) Request for Clarification of Discovery Order
to Permit Ms. Seko to Review Discovery. [Dkt. 364.]
Defendant's counsel makes specific arguments only with regards
to Ms. Seko's request for a more particularized discovery log
and the exchange of exhibit lists 45 days before trial. [Dkt.
368, ¶ 2.]

For the following reasons, the Court will deny
Defendant's motion for a more particularized discovery log. In

1

line with Ms. Seko, the Court will allow the parties to exchange exhibit lists fourteen (14) days prior to trial, should Defendant Araya's counsel agree.  Finally, the Court will deny Defendant's motion to retain copies of certain non-victim, substantive witness interview reports.

## I.  Background

Sammy Araya is charged along with four other co-defendants with one count of conspiracy to commit mail fraud and wire fraud, five substantive counts of wire fraud, and five substantive counts of mail fraud.  [Dkt. 254.]  These charges arise out of an alleged nationwide "mortgage modification" fraud scheme that targeted homeowners.  Mr. Araya is specifically alleged to have been a leader of the fraud scam, who recruited other co-conspirators into the scheme, provided training to those co-conspirators, and organized the members of the conspiracy into "teams" of individuals operating under his direction and control.  [Dkt. 254, ¶ 1.]  Trial is scheduled to begin on February 13, 2017.

On August 5, 2016, the Government emailed Defendant's counsel to arrange for a first production of discovery.  (Gov. Mem. in Opp. at 2.)  The Government asked counsel to: (1) sign a protective order; (2) specify the method by which they would like to receive bates-stamped discovery; and (3) provide a 4-terabyte hard drive onto which the Government could load some of

the electronic data seized in the case.  (*Id.*)  Defendant's
attorney responded that he would prefer to receive discovery on
DVDs, but did not provide a signed protective order or a hard
drive.  (*Id.*)  The Government followed up with counsel five
separate times in August in an attempt to get a signed
protective order.  (*Id.*)  Defense counsel finally provided a
signed order on August 30, 2016.  (*Id.* at 3.)  The government
made DVDs available for counsel to pick up that same day.  (*Id.*)
The Government alleges, however, that Defendant's counsel did
not pick up the discovery until September or early October 2016.
(*Id.*)  Counsel also did not provide the hard drive, despite
another reminder in early September to do so.  (*Id.*)

On September 28, 2016, the Government provided an
index, or discovery log, to all defense counsel, which
"consisted of a 14-page spreadsheet broken down into
approximately 640 rows by beginning and ending bates numbers,
specifying the general category of record for each document or
range of documents and the specific custodian from which the
records were received, and further providing additional
descriptive detail about certain records as appropriate."  (Gov.
Mem. in Opp. at 3.)  On October 18, 2016, the Government emailed
Defendant's counsel to notify him that an additional production
of materials was ready and attached three additional indices.
(Gov. Mem. in Opp. at 4.)  The new indices included: (1) a

3

supplemental discovery log of the bates-stamped materials, in the same format as the prior log provided on September 28, 2016; (2) a supplemental index of the electronic data seized during the execution of search warrants; and (3) an index summarizing the hard-copy evidence that was seized during searches and has been made available for defense counsel's review. (*Id.*)  The Government still had not received a hard drive from Defendant's counsel by that date. (*Id.*)  On October 21, 2016, Defendant's counsel told the Government via email that he would provide a hard drive during the week of October 24, 2016. (Gov. Mem. in Opp. at 4.)  As of October 25, 2016, he still had not done so. (*Id.*)

## II.  Standard of Review

Federal Rule of Criminal Procedure 16 states that "the government must provide to the defendant" a list of items prior to trial, including: (1) defendant's oral statements; (2) defendant's written or recorded statements; (3) defendant's prior criminal record; (4) any documents or objects that may be material to the defense, may be used in the Government's case-in-chief, or may belong to the defendant; (5) the results of any examinations and tests that the Government has in its possession or knows exist and that may be material to the defense; and (6) a written summary of potential testimony from expert witnesses. *See* Fed. R. Crim. P. 16(a)(1)(A)-(G).  It also makes clear that

4

"[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." *Id.* 16(d)(1).  The rule does not apply to the discovery of statements made by prospective Government witnesses.  *Id.* 16(a)(2).  Such statements are more properly governed by the Jencks Act, 18 U.S.C. § 3500.  *Id.*

The *Jencks* Act requires the production of the Government's witnesses' statements after each witness has testified at trial.  *See* 18 U.S.C. § 3500(a) ("[N]o statement or report . . . shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.").  This prohibition is meant to ensure witness safety, including witnesses who are alleged co-conspirators.  *United States v. Beckford*, 962 F. Supp. 780, 787 (E.D. Va. 1997) (citing *Roberts*, 811 F.2d at 259).  Thus, "a district court may not order the disclosure of *Jencks* material earlier than provided by statute."  *Id.*

### III. Analysis

Defendant adopts and incorporates Ms. Seko's arguments for his own discovery motions.  (Def. Mot. at 1.)  The only unique argument Defendant makes is the assertion that his counsel is "unduly burdened" with the "enormous" discovery in this case, given his employment at a "small or solo firm."

[Dkt. 368, ¶ 2.]  The Court will now address each motion in turn.

### A.   Motion for a More Particularized Discovery Log

Defendant first argues that a more particularized discovery log is necessary because the discovery involves "an unknown number of documents" which "likely number millions of printed pages." [Dkt. 364, ¶ 4.]  Defendant claims that the first index the Government provided was not sufficiently detailed to be helpful. [*Id.*, ¶¶ 7-8.]  Absent a helpful index, Defendant's counsel argues that he could not possibly read all of the materials before trial. [*See, e.g., id.*, ¶ 14.][1]  In other words, Defendant's counsel asserts that he cannot render effective assistance to his client.

The Government disputes Defendant's characterization of the discovery and argues that it has fully and diligently complied with its discovery obligations in this case. (Gov. Mem. in Opp. [Dkt. 369] at 12.]  As proof of this assertion, the Government points out that it has provided the discovery in "multiple searchable formats with accompanying indices." (*Id.* at 14.)  It has also provided an index with more than 600 entries that identifies the bates range, type of custodian, and the specific custodian. (*Id.* at 15.)  Furthermore, after the

---

[1] After receiving three additional indices from the Government, Ms. Seko withdrew this motion. [Dkt. 372.]

filing of Defendant Seko's motion, the Government made it
possible for this index to serve as an "overlay" onto the
electronically searchable database.  (*Id.*)  As for the computer
and cell phone images, the Government provided these images in
the same electronic format that the Government has them, sending
forensic reports for the four most sophisticated cell phones and
offering to create and disseminate reports for three more.  (*Id.*
at 16.)  Finally, the Government provided a detailed index to
describe the limited hard-copy discovery materials, which
includes "62 line-item entries . . . as well as the dates and
locations from which they were seized."  (*Id.* at 18.)  Given the
myriad ways in which the Government has sought to help defense
counsel access this discovery, the Government believes it has
far exceeded its obligations.

The Government also makes several arguments that apply
to Defendant Araya's motion specifically.  It points out that,
as the leader and supervisor of the fraud scheme, Mr. Araya "is
uniquely well positioned to understand all of the materials that
have been produced in discovery to date." (Gov. Mem. in Opp. at
6.)  At the same time, the Government views Mr. Araya's counsel
as "uniquely poorly positioned" to complain about discovery
production because he filed this motion without making any
effort to engage with the Government regarding specific
discovery-related questions, did so without providing the

7

requested 4-terabyte hard drive, and declined the Government's offer to provide him with the bates-stamped discovery in a database-friendly format.  (*Id.* at 6-7.)  The Court agrees.

Defendant has cited no legal authority for the proposition that the Government must provide a meaningful index. In fact, Rule 16 "is entirely silent on the issue of the form that discovery must take; it contains no indication that documents must be organized or indexed." *United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010).  Nevertheless, the Government has provided four different indices in an attempt to help Defendant sort through the voluminous discovery.  The Government has also offered to clarify points of confusion, an option that Defendant has not yet used.  Furthermore, it has provided the documents in multiple searchable formats.  Given the Government's efforts in this case, paired with Defense counsel's lack of effort to even pick up all of the relevant discovery from the Government, the Court will deny Defendant's motion.

B.   Motion to Exchange Exhibit Lists 45 Days Before Trial

Through incorporation, Defendant also requests that exhibit lists be exchanged 45 days prior to trial.  [Dkt. 364 at 7.]  Absent a meaningful index, Defendant argues that an exhibit

list is the only way to sort through the voluminous discovery and prepare for trial. [*Id.*, ¶ 26.][2]

The Government argues that there is no legal authority supporting Defendant's request for an exhibit list 45 days in advance. (Gov. Mem. in Opp. [Dkt. 369] at 20.) It claims that the purpose of an exhibit list is not to guide Defendant's review of discovery, but to ensure that the trial runs smoothly. (*Id.*) Nevertheless, the Government has agreed to provide Defendant with a draft exhibit list no later than 14 days before trial, assuming that Mr. Araya agrees to do the same. (*Id.* at 21.)

The Government is correct that there is no Fourth Circuit precedent that directly addresses a defendant's request for an exhibit list approximately six weeks before trial. The Fourth Circuit has clarified, however, that "Rule 16 does not require the prosecution to disclose all the minutia [sic] of its evidence, to reveal its trial strategy, and to delineate with total specificity the case it intends to present." *United States v. Anderson*, 481 F.2d 685, 694 (4th Cir. 1973) (internal citations and quotations omitted). Rather, "[w]hether to order the disclosure of an exhibit list . . . lies within the sound discretion of the court." *See Anderson*, 481 F.2d at 693.

---

[2] After receiving three additional indices from the Government, Ms. Seko later withdrew this motion and agreed to exchange exhibit lists 14 days prior to trial. [Dkt. 372.]

In the instant case, Defendant's motion sounds strikingly similar to a request that the Government "disclose all the minutia of its evidence" against him.  Given that the Government has now provided Defendant with four indices, Defendant has failed to show why the receipt of an exhibit list 45 days prior to trial would be both material to the preparation of his defense and reasonable in light of the circumstances. Accordingly, the Court denies Defendant's motion.  The Defendant may still agree, however, to exchange exhibit lists with the Government 14 days prior to trial.

C.   Motion for Copies of Certain Witness Reports

Reading Defendant's Motion in the light most favorable to him, Defendant's final request is that he be allowed to retain copies of certain witness interview reports. [Dkt. 364 at 8.]

The Government argues that Part IV of the discovery order allows Defendant's counsel to disclose the contents of *Jencks* Act and *Giglio* materials to Mr. Araya, so long as counsel does not provide him with copies.  (Gov. Mem. in Opp. [Dkt. 369] at 21.)  The Government claims that this is a standard provision in the Eastern District of Virginia, having been "routinely ordered in hundreds of cases."  (*Id.* at 22.)  Furthermore, the Government argues that the restriction clearly applies only to *Jencks/Giglio* materials (*i.e.*, interview reports) associated

10

with the Government's witnesses for its case-in-chief.  (*Id.*)
The Government has identified these reports as "interview
summaries" in the discovery index, and has offered to answer any
specific questions that Defendant's counsel may have about
whether particular documents should be included in the
restriction on providing copies.  (*Id.*)  Finally, the Government
points out that, given Mr. Araya's leadership role in the fraud
scheme, there is a heightened risk of witness intimidation and
tampering.  (Gov. Mem. in Opp. at 5-6, n.3.)  Given that risk,
Mr. Araya should not be permitted to retain copies of interview
reports.  (*Id.*)

     The Court finds Mr. Araya's arguments unpersuasive.
Mr. Araya's alleged role as the leader of the fraud scheme
implicates the underlying concerns with witness safety from the
*Jencks* Act, 18 U.S.C. § 3500.  *Beckford*, 962 F. Supp. at 787
(citing *Roberts*, 811 F.2d at 259).  Accordingly, this Court
denies Defendant's request to permit Mr. Araya to retain copies
of witness interview reports.

### IV.  Conclusion

     For the foregoing reasons, this Court denies as moot
Defendant's request for a more particularized discovery log.
The Court grants the parties' request to exchange exhibit lists
fourteen (14) days before trial, assuming that Defendant agrees.
Finally, the Court denies Defendant's request to permit Mr.

Araya to retain copies of the interview reports of certain non-victim, substantive witnesses.

An appropriate order shall issue.


December 20, 2016                   _____
Alexandria, Virginia                        /s/
                                    James C. Cacheris
                             UNITED STATES DISTRICT COURT JUDGE